UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NASEER AHMED,

        Petitioner,

       v.                                         **DECISION AND ORDER**

                                                                                          6:25-CV-06662-EAW

PHILIP RHONEY, in his official capacity
as Acting Deputy Field Office Director,
Buffalo Field Office, U.S. Immigration &
Customs Enforcement, et al., [1]

        Respondents.
_____

        Petitioner Naseer Ahmed ("Ahmed" or "Petitioner") is a civil immigration detainee alleging that that he is being detained in United States Immigration and Customs Enforcement ("ICE") custody pending removal proceedings in violation of the United States Constitution. (Dkt. 1). He seeks relief under 28 U.S.C. § 2241. (*Id*.).

        Ahmed is a 39-year-old citizen of Pakistan who has been present in this country for 10 years. (*Id*. at ¶ 1). He was apprehended on January 27, 2016, within 500 yards of the southern border, after unlawfully entering the country. (Dkt. 21 at 3). About six months later—after establishing a credible fear of persecution or torture if returned to Pakistan—

---

[1]     Philip Rhoney is the Acting Deputy Field Office Director of the Buffalo Field Office of the United States Immigration and Customs Enforcement and thus he is substituted as Respondent in place of Joseph Freden pursuant to Federal Rule of Civil Procedure 25(d). The Clerk of Court is directed to update the docket to reflect this substitution.

he was ordered released from custody by an immigration judge after posting a $10,000 bond. (*Id.*; Dkt. 17-1 at 11). On August 31, 2025, while visiting his brother-in-law at Fort Drum, New York, he was taken into custody and has been held since that time at the Buffalo Federal Detention Facility in Batavia, New York. (*Id.* at ¶¶ 2-3). After that, on November 24, 2025, the Board of Immigration Appeals dismissed Ahmed's appeal of his removal order. (Dkt. 21 at 4). Ahmed has appealed that determination to the Second Circuit Court of Appeals with an accompanying motion to stay removal. (Dkt. 20 at 7); *see Ahmed v. Bondi*, Case No. 25-3026, Dkt. 1, Dkt. 8 (2d Cir. Dec. 2, 2025).

Ahmed commenced this proceeding on November 13, 2025. The parties have filed various briefing pursuant to the Court's directions (*see* Dkt. 4; Dkt. 5; Dkt. 9; Dkt. 11; Dkt. 14; Dkt. 15; Dkt. 17; Dkt. 19; Dkt. 20; Dkt. 21), and oral argument was held on December 18, 2025 (Dkt. 18). After carefully studying the issues, the Court denies Respondents' motion to dismiss (Dkt. 14) and grants the petition to the extent Ahmed requests a bond hearing.

In making this decision, the Court notes the following.[2] First, to the extent Respondents seek dismissal under the theory that Ahmed is detained pursuant to 8 U.S.C. § 1231 (Dkt. 14; Dkt. 17), the Court disagrees. Notwithstanding inconsistent results reached by judges in this District and Respondents' attempt to persuade the undersigned to

---

[2] Under more ideal circumstances, the Court would issue a more robust decision that, among other things, more thoroughly summarized the parties' arguments and relevant legal authority. But like other judges in this District and around the country, the undersigned has been deluged in recent months with § 2241 proceedings challenging alleged wrongful detentions of noncitizens by the current executive administration. That said, the undersigned has carefully reviewed the parties' arguments and relevant legal authority.

revisit the issue, this Court continues to agree with the overwhelming majority of judges in this Circuit that have ruled the Second Circuit's forbearance policy amounts to a court-ordered stay, such that § 1231 is not yet triggered.  *See Vazques v. Garland*, No. 1:21-CV-00477 EAW, 2021 WL 3741589 (W.D.N.Y. Aug. 24, 2021).

Second, because of the Court's conclusion concerning the inapplicability of § 1231, resolution of Ahmed's request for a bond hearing turns on whether he is detained pursuant to 8 U.S.C. § 1226(a) (as he claims) or 8 U.S.C. § 1225(b)(1)(B)(ii) (as claimed by Respondents in the alternative).  Section 1225(b)(1)(B)(ii) is entitled "Referral of certain aliens" and states:  "If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien shall be detained for further consideration of the application for asylum."  The provision applies to noncitizens stopped at or near the border who make a claim for asylum.  And no question, when Ahmed was first encountered 10 years ago, he was detained pursuant to this provision.

But Ahmed was released on bond by an immigration judge and he has resided in this country for a decade.  The provision allowing for release on bond is 8 U.S.C. § 1226(a).  Respondents do not argue that Ahmed was not released on bond pursuant to § 1226(a).  Instead, they argue that he should not have been released on bond based on a decision decided *three years after* Ahmed's release.  Respondents cite to the Attorney General's decision in *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019), concluding that the Board of Immigrations Appeals had wrongly decided that noncitizens transferred to full immigration

proceedings after establishing a credible fear of prosecution, were eligible for release on bond pursuant to 8 U.S.C. § 1226(a). (Dkt. 17 at 19).

Setting aside whether *Matter of M-S-* applies retroactively or whether it is a correct interpretation of the statute, it does not support the conclusion that the government can unilaterally re-detain an individual released on bond years later with no individualized hearing or demonstrated change in circumstances. *See Quinteros Moran v. Joyce*, No. 25 CIV. 9645 (GBD), 2025 WL 3632895, at *3 (S.D.N.Y. Dec. 15, 2025) (rejecting argument that *Matter of M-S-* should be applied retroactively to re-detain previously released noncitizen without first revoking bond). And even if it did support such a result, Respondents offer no justification for why they took no steps since the issuance of *Matter of M-S-* in April 2019 (almost seven years ago) to revoke Ahmed's bond. In other words, if *Matter of M-S-* truly operated to nullify Ahmed's release on bond, then he is no different than a non-citizen who is encountered within the interior of the United States after entering without inspection. And an individual like that would be considered detained under these circumstances pursuant to 8 U.S.C. § 1226(a). *Cf. Ivonin v. Rhoney*, No. 6:25-CV-06673 EAW, 2026 WL 199283, (W.D.N.Y. Jan. 26, 2026) (where noncitizen encountered at the border was paroled into United States, and parole expired, subsequent detention was pursuant to § 1226, not § 1225).

Under no reasonable construction of the facts could Ahmed's arrest in August 2025 be viewed as a continuation of his initial border encounter. Put simply, the suggestion that ICE can incarcerate an individual like Ahmed who has been living in this country for 10 years with no due process or individualized hearing, should send chills through citizens

and noncitizens alike.  This Court cannot accept that the laws of this country would support such tactics.

For these reasons, the petition is granted to the extent that Petitioner seeks a bond hearing, and a bond hearing shall be conducted in accordance with the following terms:

1. Petitioner shall be granted a bond hearing before an immigration judge ("IJ") <u>on or before February 9, 2026</u>.  If Petitioner requests a continuance that results in a bond hearing date outside this deadline, such a continuance will comply with this Order as long as the new date falls within a reasonable time period.

2. After considering the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Court concludes that the government shall have the burden to demonstrate dangerousness or flight risk by clear and convincing evidence.  *See Lieogo v. Freden,* No. 6:25-CV-06615 EAW, 2025 WL 3290694, at *4-6 (W.D.N.Y. Nov. 26, 2025). In deciding whether the government has met its burden of proof, the IJ must consider whether less-restrictive alternatives to detention can reasonably address the government's interest in Petitioner's continued detention.

3. If the IJ finds that the government has not met its burden, then in setting any bond the IJ must consider Petitioner's ability to pay and alternative conditions of release.

4. Thus, in order to continue Petitioner's detention after any bond hearing, the IJ must find by clear and convincing evidence and make findings that no condition or combination of conditions of release can reasonably ensure Petitioner's appearance and the safety of the community—that is, even with conditions, Petitioner presents an identified and articulable risk of flight or a threat to another person or the community.

5.      Respondents are directed to file a status update with the Court <u>on or before</u> <u>February 11, 2026</u>.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      February 2, 2026
            Rochester, New York